**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| CARRIE ANN GRANT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15CV00515 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Carrie Ann Grant, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Supplemental Security Income ("SSI"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entry 6 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 8, 10; see also Docket Entry 9 (Plaintiff's Memorandum), Docket Entry 11 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

### I.  PROCEDURAL HISTORY

Plaintiff applied for SSI. (Tr. 149-76.) Upon denial of that application initially (Tr. 62-71, 85-93) and on reconsideration (Tr. 72-82, 95-104), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 105-07). Plaintiff

(represented by counsel), Plaintiff's boyfriend Danny Thomas, and a vocational expert ("VE") testified at the hearing. (Tr. 28-61.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 12-23.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] has not engaged in substantial gainful activity since January 5, 2012, the application date.
>
> 2. [Plaintiff] has the following severe impairments: history of deep vein thrombosis, systemic lupus erythematosus, depression, anxiety, headaches, meningioma of unknown significance, and urinary incontinence.
>
> . . .
>
> 3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .
>
> 4. . . . [Plaintiff] has the residual functional capacity to perform light work . . . except: she cannot perform more than frequent handling and finger[ing]; cannot work in direct sunlight; must have ready access to a restroom; can occasionally climb ramps, stairs, kneel, crawl, crouch, stoop, or balance; cannot climb ropes, ladders, or scaffolds; avoid concentrated exposure to hazards, extremes of heat or cold, exposure to humidity, wetness, or vibration; and no more than moderate exposure to noise. Her mental impairments prevent her from performing more than unskilled work in that she can perform simple, routine, repetitive tasks with no interaction with the public and only occasional contact

2

with coworkers or supervisors for the completion of job tasks; work that requires no more than routine changes; and that is non-production oriented.

. . .

5.  [Plaintiff] is unable to perform any past relevant work.

. . .

9.  Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform.

. . .

10.  [Plaintiff] has not been under a disability, as defined in the [] Act, since January 5, 2012, the date the application was filed.

(Tr. 17-23 (bold font and internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead,

3

the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Hines</u>, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." <u>Id.</u> at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the

4

claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

_____

[1] The Act "comprises two disability benefits programs. The Disability Insurance Benefits Program . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2]  A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity

---

[2]    "Through the fourth step, the burden of production and proof is on the claimant.   If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

## B. Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "the ALJ conducted a flawed RFC assessment by giving less than controlling weight to the opinion of [Plaintiff's] treating physician, Dr. Jonas" (Docket Entry 9 at 10); and

2) "the ALJ presented a legally insufficient hypothetical to the VE resulting in a flawed step 5 finding that [Plaintiff] could adjust to other work" by failing to account for Plaintiff's moderate limitation in concentration, persistence, or pace ("CPP") (id. at 16).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 11 at 7-19.)

### 1. Treating Physician's Opinion

In Plaintiff's first issue on review, she asserts that the ALJ "disregarded" treating rheumatologist Dr. Beth L. Jonas's opinions in a Medical Source Statement ("MSS") as inconsistent with the limitations in her treatment notes, but failed to specifically identify any inconsistencies or to indicate "what weight, if any, was given to Dr. Jonas'[s] opinion[s]." (Docket Entry 9 at 13-14 (citing Tr. 21).) Plaintiff further contests the ALJ's conclusions that "the medical evidence does not confirm that [Plaintiff's lupus] flares last as long as she has alleged" and that such flares "are controlled within a reasonable period." (Id. at 15 (citing

8

Tr. 21).)  According to Plaintiff, medical records from two other treating sources provide further support for Dr. Jonas's opinions. (Id. at 15-16 (citing Tr. 436, 437, 447, 455-56, 481-82).) Plaintiff's contentions do not warrant relief.

The treating source rule generally requires an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment.  20 C.F.R. § 416.927(c)(2) ("[T]reating sources . . . provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.").  The rule also recognizes, however, that not all treating sources or treating source opinions merit the same deference.  The nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords an opinion.  See 20 C.F.R. § 416.927(c)(2)(ii).  Moreover, as subsections (2) through (4) of the rule describe in great detail, a treating source's opinion, like all medical opinions, deserves deference only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record.  See 20 C.F.R. § 416.927(c)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should

9

be accorded significantly less weight." Craig, 76 F.3d at 590 (emphasis added). Here, the ALJ's evaluation of Dr. Jonas's opinions comports with the above-cited regulations and Craig.

Dr. Jonas completed a form entitled, "Medical statement regarding lupus for Social Security disability claim" (the MSS) on October 4, 2013, on which she indicated that Plaintiff suffered from systemic lupus erythematosus ("SLE") characterized by arthritis, rash, oral ulcers, deep vein thrombosis/pulmonary embolism, autoimmune hemolytic anemia, alopecia, fatigue, fever, malaise, and weight loss. (See Tr. 522.) According to Dr. Jonas, Plaintiff's lupus manifests itself most severely in Plaintiff's skin. (See id.) As a result of lupus, Dr. Jonas opined that Plaintiff could stand for 60 minutes at a time, sit for two hours at a time, work for one hour per day, occasionally lift 5 pounds, bend, stoop, handle (gross manipulation), and raise her arms over shoulder level, and could never engage in fine manipulation with either hand. (See Tr. 523.) Dr. Jonas predicted that Plaintiff's lupus would cause her absence from work more than three days per month. (See Tr. 524.)

The ALJ evaluated Dr. Jonas's opinions in the MSS as follows:

> Dr. Jonas responded to interrogatories of [Plaintiff's] representative by stating that [Plaintiff] has SLE that results in significant skin involvement and to a lesser extent, joint pain, swelling, fatigue, malaise, and weight loss. Dr. Jonas stated that [Plaintiff's] moderate pain levels would cause her to be absent from the workplace more than three time a month. The undersigned notes that Dr. Jonas' statements are not

10

<u>consistent</u> with the limitations contained within her treatment notes of [Plaintiff] (see, Exhibit B4F and B8F) [Dr. Jonas's treatment records]. As there are <u>inconsistencies between the documented findings as a result of examinations and the limitations set forth in Exhibit B9F</u> [the MSS], the undersigned cannot afford controlling weight to Dr. Jonas' statement. <u>Weight</u> has been given the documentation that establishes that [Plaintiff] experiences infrequent exacerbations or flares of the symptoms of [SLE], but that the acute symptoms respond quickly and diminish with appropriate treatment.

(Tr. 21 (emphasis added).)

Although in the above-quoted paragraph the ALJ did not specify the inconsistencies between Dr. Jonas's findings on examination and the opinions in her MSS, in the paragraph immediately above in his decision, the ALJ discussed some of Dr. Jonas's findings. (See id.) For example, the ALJ noted that "[t]he medical evidence indicates that once [Plaintiff] is treated, the exacerbation of her symptoms are [sic] controlled within a reasonable period, and certainly do [sic] not extend for months at a time," and cited to medical evidence which included Dr. Jonas's August 26, 2013 treatment note reflecting a lupus flare due to medication non-compliance. (Id. (citing Tr. 493).) The ALJ also remarked that, "[d]espite [Plaintiff's] testimony that she is frequently unable to use her hands; on only one occasion, during an acute [flare], were any abnormalities noted in [Plaintiff's] grip strength," and cited to Dr. Jonas's treatment note. (Id. (citing Tr. 307).) Thus, read in context, the ALJ's evaluation sufficiently explains the basis

11

for his decision not to afford Dr. Jonas's opinions controlling weight.

Moreover, contrary to Plaintiff's argument (see Docket Entry 9 at 14), the ALJ's statement that he gave "[w]eight" to Dr. Jonas's treatment notes insofar as such documents showed that Plaintiff "experience[d] infrequent exacerbations or flares of [SLE] symptoms" that "respond quickly and diminish with appropriate treatment" (Tr. 21) makes clear that the ALJ gave some "weight" to Dr. Jonas's opinions regarding the symptoms and severity of Plaintiff's SLE. However, the ALJ ultimately disagreed with Dr. Jonas's significant, ongoing work restrictions, given the ALJ's conclusion regarding the infrequency and relatively short duration of Plaintiff's flares.

Finally, Plaintiff's contention that the treatment notes of Dr. Maria Ibarra and Dr. David E. Bouska provide support for Dr. Jonas's opinions falls short. (See Docket Entry 9 at 15-16.) Although Drs. Ibarra and Bouska both treated Plaintiff for SLE symptoms including rash, fever, joint pain, and fatigue (see, e.g., Tr. 429-40, 481-84) (symptoms which the ALJ credited (see Tr. 21)), neither doctor provided any opinions regarding Plaintiff's ability to perform work-related functions, much less opinions as restrictive as those of Dr. Jonas.

In short, the ALJ did not commit reversible error in his evaluation of Dr. Jonas's opinions.

12

## 2. Concentration, Persistence, or Pace

Plaintiff next asserts that the ALJ erred by failing to include adequate restrictions in the RFC and corresponding hypothetical question to the VE arising out of Plaintiff's moderate limitation in CPP. (See Docket Entry 9 at 16-19.) According to Plaintiff, the ALJ's restrictions to "simple, routine repetitive tasks at a job that is non-production oriented with no more than routine changes" (id. at 16) did not sufficiently account for Plaintiff's moderately impaired ability to stay on task, in violation of Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015) (Docket Entry 9 at 17-18). Plaintiff's arguments in this regard fail to entitle her to remand.

The Fourth Circuit expressly has held that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]." Mascio, 780 F.3d at 638. In this case, however, the ALJ did not fail to include a restriction reasonably related to a moderate limitation in Plaintiff's ability to stay on task; to the contrary, as quoted above, the ALJ explicitly included a restriction to "a job that is non-production oriented with no more than routine changes." (Tr. 16.)

Following Mascio, federal district courts in the Fourth Circuit have split on whether a restriction to non-production work adequately accounts for moderate limitation in CPP. Compare Wilson

13

v. Colvin, No. 2:14-cv-3209-TLW-MGB, 2016 WL 625088, at *5 (D.S.C. Jan. 15, 2016) (unpublished) (holding restriction to "non-production work, no assembly line production, or high speed manner, . . . [s]tanding alone, . . . does not account for a limitation in [CPP]"), recommendation adopted, 2016 WL 613891 (D.S.C. Feb. 16, 2016) (unpublished), Jones v. Colvin, No. 4:14-CV-00200-RN, 2015 WL 4773542, at *6 (E.D.N.C. Aug. 13, 2015) (unpublished) (deeming "work in a low production occupation . . . which would require no complex decision making, constant change or dealing with crisis situations" insufficient to account for moderate limitation in CPP), and Franklin v. Colvin, No. 5:14-cv-84, 2015 WL 4510238, at *2 (W.D.N.C. July 24, 2015) (unpublished) (concluding ALJ must "directly explain" how restriction of "production/ assembly-line/high-speed work or contact with the public is a proper accounting for [the claimant's] limitations in [CPP]"), with Hill v. Colvin, Civ. No. DKC 15-1027, 2016 WL 3181762, at *8 (D. Md. June 8, 2016) (unpublished) (finding limitation to "no production rate or piece work" accounted for the plaintiff's moderate difficulties in CPP and collecting cases), Parker v. Colvin, No. 3:14cv502, 2015 WL 5793695, at *23 (E.D. Va. Sept. 29, 2015) (unpublished) (deciding RFC containing restriction to "non-production oriented work setting with no public interaction and limited interaction with co-workers and supervisors . . . appropriately considered [the plaintiff's] moderate limitations in

14

[CPP]"), and Linares v. Colvin, No. 5:14-CV-00120, at *4 (W.D.N.C. July 17, 2015) (unpublished) (holding Mascio distinguishable because ALJ restricted the plaintiff to "a stable work environment at a nonproduction pace with only occasional public contact" which "specifically addressed [the plaintiff's] ability to stay on task as required by Mascio").

Within the Middle District of North Carolina, cases interpreting this aspect of Mascio have reached differing results. For example, in Pulliam v. Colvin, No. 1:13CV176, 2016 WL 843307 (M.D.N.C. Mar. 1, 2016) (unpublished) (Osteen, C.J.), the Court reviewed under Mascio a moderate limitation in CPP in the context of an RFC limiting the claimant "to simple, routine, repetitive tasks in a non-production and non-quota based environment," along with restrictions on interaction with others and an express finding that the claimant "could maintain focus throughout the day." Id. at *1-2. Although the Court concluded that the ALJ "failed to explain why the moderate limitations in [CPP] . . . did not translate to a limitation in the RFC assessment," id. at 5, the Court did not expressly address the effect of the non-production/non-quota restriction (see id. at 5-7) and, in fact, noted that the question squarely presented in this case remains open: "a number of post-Mascio cases stat[e] that a . . . limitation to simple, routine, repetitive tasks in a low production and/or socially isolated environment may be, without more,

15

insufficient to account for moderate limitations in [CPP]" id. at *5 n.7 (emphasis added).

Similarly, in Manns v. Colvin, No. 1:15-CV-133, 2015 WL 5821245 (M.D.N.C. Oct. 5, 2015) (unpublished) (Eagles, J.), the Court considered a mental RFC which included restrictions to low-stress work with only occasional decision-making and changes, and no work at a production rate or pace. Id. at 1. The Court found that, given the significant record evidence of the claimant's difficulties in CPP, the ALJ had failed to adequately explain "how the mental RFC she found adequately encompasses Ms. Manns' undisputed limitations in [CPP]." Id. at 3. Again, however, the Court did not specifically analyze whether a non-production restriction sufficiently addresses moderate deficits in CPP. See id. at 1-3.

In another case, Cummings v. Colvin, No. 1:14CV465, 2016 WL 792433 (M.D.N.C. Feb. 26, 2016) (unpublished) (Peake, M.J.), recommendation adopted, slip op. (M.D.N.C. Mar. 28, 2016) (Osteen, C.J.), the Court concluded that, "[a]lthough there is a limitation to a 'non-production environment,' neither the ALJ's decision, nor the state agency physician's report which the ALJ credits, links [the plaintiff's] difficulties in [CPP] to the non-production limitation or to any other aspect of the RFC" and that "the record does not appear to provide the 'logical bridge' necessary for this Court to find that the RFC adequately takes into account [the

16

plaintiff's] moderate difficulties in [CPP]." Id. at 4; see also Burrow v. Colvin, No. 1:15CV163, 2016 WL 1258840, at *4-5 (M.D.N.C. Mar. 28, 2016) (unpublished) (Webster, M.J.) (citing Cummings and finding, under facts of case, restriction to non-production environment and constraints on social interactions did not account for the plaintiff's moderate difficulties in CPP). However, in Massey v. Colvin, No. 1:13CV965, 2014 WL 3827574, at *7 (M.D.N.C. June 19, 2015) (unpublished) (Webster, M.J.), recommendation adopted, slip op. (M.D.N.C. Aug. 13, 2015) (Schroeder, J.), the Court distinguished Mascio and concluded that a restriction to non-production oriented job, along with limitations on noise and contact with others, "properly captured" the plaintiff's moderate limitation in CPP. Id.

The Fourth Circuit has not yet had an occasion, post-Mascio, to address whether a restriction to non-production work sufficiently accounts for a moderate limitation in CPP. However, in reaching its conclusion in Mascio that a restriction to "simple, routine tasks or unskilled work" did not adequately address moderate deficits in CPP, the Fourth Circuit expressly relied on the Eleventh Circuit's decision in Winschel v. Commissioner of Soc. Sec., 631 F.3d 1176 (11th Cir. 2011). Mascio, 780 F.3d at 638 ("[W]e agree with other circuits that an ALJ does not account "for a claimant's limitations in [CPP] by restricting the hypothetical question to simple, routine tasks or unskilled work." Winschel v.

17

Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third, Seventh, and Eighth Circuits).").  As the quotation above makes clear, the Winschel court, in turn, relied upon decisions from the Third, Seventh, and Eighth Circuits. Winschel, 631 F.3d at 1180 (citing Stewart v. Astrue, 561 F.3d 679, 684-85 (7th Cir. 2009), Ramirez v. Barnhart, 372 F.3d 546, 554 (3d Cir. 2004), and Newton v. Chater, 92 F.3d 688, 695 (8th Cir. 1996)). Thus, a review of how those appellate courts (and district courts within those circuits) have ruled in cases involving a moderate limitation in CPP and a restriction to non-production work in the mental RFC informs the undersigned Magistrate Judge's understanding of how the Fourth Circuit likely would rule on such an issue.

In Ramirez, on which the Winschel court relied, the Third Circuit held that restrictions to "no more than simple one or two-step tasks; no travel outside the workplace; and a reasonable opportunity to receive and make personal telephone calls" did "not adequately encompass a finding that [the plaintiff] often has deficiencies in [CPP]." Ramirez, 372 F.3d at 554 (emphasis added). However, the mental RFC in that case did not include a restriction to non-production work and, in fact, the court expressly noted the VE's testimony that all three jobs cited as suitable for the plaintiff had daily production quotas.  Id.  Moreover, in a subsequent Third Circuit case, Russo v. Astrue, 421 F. App'x 184 (3d Cir. 2011), the court held that a hypothetical which precluded

"a quota to fulfill . . . account[ed] for [the plaintiff's] moderate difficulties with [CPP]." Id. at 192 (emphasis added). Since Russo, district courts in the Third Circuit not only have followed Russo, see, e.g., Bacon v. Colvin, Civ. No. 12-1477-GMS, 2016 WL 556727, at *10 (D. Del. Feb. 12, 2016) (unpublished), but also have questioned the continuing validity of Ramirez on the CPP issue in question, see, e.g., Rodgers v. Colvin, Civ. No. 13-75-J, 2014 WL 4748907, at *1 n.1 (W.D. Pa. Sept. 24, 2014) (unpublished) ("[T]he Social Security regulations pertaining to mental impairments were revised, and the evaluation of [CPP] was changed from a five-point scale based on the frequency of the deficiencies to the current five-point severity scale. Although both 'often' and 'moderate' occupy the middle position in their respective scales, more recent Third Circuit decisions have distinguished Ramirez based on the difference between 'often' suffering from these deficiencies and being 'moderately' limited in those areas. The continuing validity of Ramirez under the new severity scale, therefore, is questionable." (internal citations omitted)).

As discussed above, the Winschel court also explicitly relied on the Seventh Circuit's holding that restrictions to simple, routine tasks with no constant interaction with others did not suffice for claimants with moderate limitation in CPP, Stewart, 561 F.3d at 684-85. However, like Ramirez, Stewart did not involve a mental RFC that included a restriction to non-production work, id.;

see also Ramirez, 372 F.3d at 554. Moreover, Stewart cited a Sixth Circuit case, Smith v. Halter, 307 F.3d 377, 380 (6th Cir. 2001), which found that precluding production quotas adequately accounted for moderate limitation in CPP, see Stewart, 561 F.3d at 685. Further, subsequent to Stewart, the Seventh Circuit concluded that "the ALJ captured [the plaintiff's] moderate limitation in [CPP] when he included a restriction of 'no high production goals.'" Seamon v. Astrue, 364 F. App'x 243, 248 (7th Cir. 2010) (citing Arnold v. Barnhart, 473 F.3d 816, 820 (7th Cir. 2007)); see also Grasso v. Colvin, Civ. No. 13-C-0112, 2013 WL 4046338, at *14 (E.D. Wis. Aug. 8, 2013) (unpublished) (finding restrictions to limited changes and decision-making and no production quotas accommodated moderate limitation in CPP); Muenzenberger v. Colvin, Civ. No. 12-C-138, 2013 WL 3305546, at *12 (W.D. Wis. July 1, 2013) (unpublished) (holding "a non-noisy environment and . . . tasks not requiring a rapid pace" captured moderate limitation in CPP).

More recently, the Seventh Circuit held, without distinguishing Seamon, that a restriction to work "free of fast paced production requirements" did not account for the plaintiff's moderate deficits in CPP, because the ALJ failed to define "fast paced production." Varga v. Colvin, 794 F.3d 809, 815 (7th Cir. 2015). Thus, the holding in Varga, when considered in conjunction with the holdings in Seamon and Stewart, suggests the Seventh Circuit would find that production-related restrictions properly

account for a moderate limitation in CPP, at least where the production-related restriction appears sufficiently clear.

As described above, the Winschel court (and, in turn, the Mascio court) also relied on an Eighth Circuit decision, which held that a restriction to "simple jobs" did not adequately address the limitations of an individual who "often" suffered difficulties in CPP, Newton, 92 F.3d at 695. However, the Newton court did not consider whether a restriction to non-production work would sufficiently account for moderate limitation in CPP. See id. Moreover, just over a year later, the Eighth Circuit concluded that a restriction to jobs that did "not require close attention to detail" or "work at more than a regular pace" sufficiently encompassed the limitation of a person who "often" had deficiencies in CPP. Brachtel v. Apfel, 132 F.3d 417, 421 (8th Cir. 1997).[5] Since Brachtel, district courts within the Eighth Circuit repeatedly have concluded that restrictions to non-production work adequately account for moderate limitation in CPP. See, e.g., Gibson v. Colvin, No. 14-1023-CV-C-DGK, 2016 WL 1090650, at *4 (W.D. Mo. Mar. 21, 2016) (unpublished) (finding restriction to "a work environment free of fast-paced production requirements" sufficiently accounted for moderate limitation in CPP); Burks v.

_____

[5] Subsequent to Brachtel, the Eighth Circuit moved even further away from its holding in Newton, and found that a mere restriction to simple, routine, repetitive tasks adequately accounted for moderate limitation in CPP. See Howard v. Massanari, 255 F.3d 577, 581-82 (8th Cir. 2001).

21

Colvin, No. 4:14-CV-01121-DGK-SSA, 2016 WL 316869, at *5 (W.D. Mo. Jan. 26, 2016) (unpublished) (deeming preclusion of "strict production quota[s] with the emphasis being on a per shift rather than a per hour basis" adequate to address moderate limitation in CPP); Henderson v. Colvin, Civ. No. C 15-2057, 2016 WL 2894915, at *9 (N.D. Iowa May 17, 2016) (unpublished) (concluding limitation to "work performed at a regular pace" encompassed moderate deficits in CPP); but see Meyer v. Colvin, No. 1:15-cv-00006-JAR, 2016 WL 949526, at *6 (E.D. Mo. Mar. 14, 2016) (unpublished) (holding that restriction of "high production-rate jobs, although low and medium production-rate jobs would be acceptable" did not account for moderate limitation in CPP (emphasis added)).

Lastly, it appears that the Eleventh Circuit has not addressed a non-production restriction since Winschel, but that district courts within the Eleventh Circuit (although split) more often have found such restrictions adequate to account for moderate limitation in CPP. Compare Adams v. Commissioner, No. 6:13-cv-1599-Orl-DAB, 2015 WL 1020559, at *5 (M.D. Fla. Mar. 6, 2015) (unpublished) (deeming preclusion of "assembly lines or production quotas" insufficient to account for moderate difficulties in CPP because ALJ did not cite to any medical evidence to support mental RFC), with Jackson v. Colvin, No. 1:14-cv-01868-AJB, 2015 WL 5601876, at *14 (N.D. Ga. Sept. 23, 2015) (unpublished) (concluding restriction "to work that is low stress and . . . not production paced"

22

accounted for moderate limitation in CPP), <u>Hicks v. Colvin</u>, No. 1:12-cv-1663-JEC, 2014 WL 3573732, at *10-11 (N.D. Ga. July 21, 2014) (unpublished) (deciding that prohibition of "fast-paced work" sufficiently addressed moderate difficulties in CPP), <u>and</u> <u>Allen v.</u> <u>Colvin</u>, No. 1:11-cv-197-MW/CJK, 2013 WL 5188311, at *9 (N.D. Fla. Sept. 13, 2013) (unpublished) (determining restriction to "low stress (non-production oriented), simple work" accommodated moderate limitation in CPP (internal brackets omitted)).

In summary, the weight of authority in the circuits that rendered the rulings undergirding the Fourth Circuit's holding in <u>Mascio</u> supports the view that the non-production restriction adopted in this case sufficiently accounts for Plaintiff's moderate limitation in CPP.  Moreover, that approach makes sense.  In <u>Mascio</u>, the Fourth Circuit held only that, when an ALJ finds moderate limitation in CPP, the ALJ must <u>either</u> adopt a restriction that addresses the "staying on task" aspect of CPP-related deficits (which a restriction to simple tasks does not, at least on its face) <u>or</u> explain why the CPP limitation of that particular claimant did not necessitate a further restriction regarding "staying on task."  Where, as here, the ALJ has included a specific restriction that facially addresses "moderate" (not "marked" or "extreme," <u>see</u> 20 C.F.R. § 416.920a(c)(4)) limitation in the claimant's ability to stay on task, i.e., a restriction to "non-production oriented" work, <u>Mascio</u> does not require further explanation by the ALJ, at

23

least absent some evidentiary showing by the claimant (not offered here) that he or she cannot perform even non-production-type work because of his or her particular CPP deficits.

### III. CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 8) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 10) be granted, and that judgment be entered for Defendant.


                         /s/ L. Patrick Auld
                      **L. Patrick Auld**
                 **United States Magistrate Judge**


July 26, 2016

24